JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Michael Kates

**DEFENDANTS**
National Railroad Passenger Corporation d/b/a Amtrak

(b) County of Residence of First Listed Plaintiff: **Delaware**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Fortunato, Esquire, (PA Bar No.58917)-Rubin, Fortunato & Harbison P.C.,1200 Liberty Ridge Drive, Ste. 1200, Wayne, PA 19087-Tel: 610-408-2005

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / **PERSONAL PROPERTY** / 370 Other Fraud | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 371 Truth in Lending | 710 Fair Labor Standards Act | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury / 380 Other Personal Property Damage | 720 Labor/Management Relations | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice / 385 Property Damage Product Liability | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights / **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | [x] 442 Employment / 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations / 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment / 535 Death Penalty | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other / **Other:** / 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education / 550 Civil Rights | 465 Other Immigration Actions | | |
| | 555 Prison Condition | | | |
| | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District (specify)
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Age Discrimination in Employment Act 29:621:634; Delaware Discrimination in Employment Act 19:710 et seq.

Brief description of cause:
Age Discrimination and negligent infliction of emotional distress

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*: JUDGE _____ DOCKET NUMBER _____

**DATE:** Sep 11, 2025

**SIGNATURE OF ATTORNEY OF RECORD:** s/ Michael J. Fortunato

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 30th and Market Streets, Philadelphia, PA 19104

---

*RELATED CASE IF ANY:* Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.     Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

1. Indemnity Contract, Marine Contract, and All Other Contracts
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Wage and Hour Class Action/Collective Action
6. Patent
7. Copyright/Trademark
8. ☒ Employment
9. Labor-Management Relations
10. Civil Rights
11. Habeas Corpus
12. Securities Cases
13. Social Security Review Cases
14. Qui Tam Cases
15. Cases Seeking Systemic Relief  *see certification below*
16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify)*:_____
7. Products Liability
8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ does / ☒ **does not** have implications beyond the parties before the court and ☐ does / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL KATES <br><br> *Plaintiff,* <br><br> v. <br><br> NATIONAL RAILROAD PASSENGER CORPORATION D/B/A AMTRAK <br><br> *Defendant.* | Case No. _____ |

**VERIFIED COMPLAINT**

Plaintiff, Michael Kates ("Kates"), by and through his undersigned attorney, brings this Verified Complaint against the National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") and respectfully avers as follows:

### A. **NATURE OF THE ACTION**

1. This action arises from Amtrak's discrimination against Mr. Kates in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621- 634 ("ADEA") and in violation of the Delaware Discrimination in Employment Act, 19 Del. C. §§ 710 et seq. ("DDEA"), as well as Amtrak's negligent infliction of emotional distress.

### B. **THE PARTIES**

2. Kates is 59 years old, and he worked for Amtrak for 28 ½ years.

3. Kates is a citizen of the Commonwealth of Pennsylvania and resides at 120 Locust Lane, Media, PA 19063.

4. The National Railroad Passenger Corporation (known as Amtrak, which is a combination of "America" and "Track") is a federally chartered corporation, with the federal

government as majority stockholder. Amtrak is operated as a for-profit company, rather than a public authority. Amtrak was created by Congress in the Rail Passenger Service Act of 1970 and operates intercity passenger rail services in 46 states, including Pennsylvania and the District of Columbia. The Amtrak Board of Directors is appointed by the President of the United States and confirmed by the U.S. Senate.

5. Amtrak's headquarters are located at 1 Massachusetts Avenue NW, Washington, DC 20001. Amtrak routinely conducts business at 30th and Market Streets, Philadelphia, PA 19104.

6. Kates first worked for Amtrak from June 15, 1986 through February 2, 2004.

7. Kates was welcomed back to Amtrak on November 18, 2013 in the role of Senior Director in operations planning and led the iLMS (Integrated Labor Management System) Project. See Exhibit "A."

8. Kates was a highly regarded and well-reviewed Senior Director of Crew Management. He worked in Amtrak's Consolidated National Operations Center (CNOC) in Wilmington, Delaware. He was abruptly and wrongfully terminated on April 24, 2024 in violation of federal and state statutory protections.

C. **JURISDICTION AND VENUE**

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Plaintiff asserts the causes of action under the prohibitions against age discrimination pursuant to 29 U.S.C. § 621-634, as well as the DDEA.

10. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court has supplemental jurisdiction over Kates's state law claims because those claims arise out of the same basis of operative facts as Kates's claims under the ADEA 28 U.S.C. § 1367.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which the Defendant routinely conducts business and the Plaintiff resides.

13. The conditions precedent to the institution of this action have been fulfilled with respect to Amtrak.

14. On September 10, 2024, Kates dual filed a charge of discrimination with the EEOC and the Delaware Department of Labor, Office of Anti-Discrimination, against Amtrak alleging that it wrongfully terminated his employment and subjected him to, among other things, age discrimination in violation of federal and state law.

15. The EEOC (in Philadelphia) assigned Charge No. 530-2024-09259 to Kates's claims against Amtrak.

16. The EEOC issued a Dismissal and Notice of Rights ("Right to Sue") with respect to Charge No. 530-2024-09259 on June 16, 2025.

17. Kates has exhausted his administrative remedies as to Amtrak.

18. Kates files this instant Complaint within ninety (90) days of his receipt of the EEOC Right to Sue with respect to Amtrak.

D. **THE FACTS**

19. Kates began with Amtrak as a clerk in 1986. For the next 18 years he rose through the ranks and was promoted eight times. He departed with an exceptional reputation in 2004.

20. Kates returned to Amtrak in 2013 as Senior Director of iLMS.[1] iLMS is part of Amtrak's Crew Management operations located at the Amtrak Consolidated National Operations Center (CNOC) in Wilmington, DE. Kates's responsibilities extended throughout the entire Amtrak network including Philadelphia.

21. Kates later accepted the Senior Director Crew Management position in November 2018. Kates managed 105 employees (95 Crew Management Representatives and 10 management employees). Again Kates's responsibilities extended throughout the entire Amtrak network including Philadelphia.

22. Crew Management Representatives (CMRs) ensure that all on-train and train and engine crews are scheduled to meet operational staffing requirements and serve as a point of contact for crew employees. Crew Management Representatives work under pressure and are responsible for coordinating day-to-day dispatch functions of a team of crew dispatchers during assigned shifts. To lead and direct the CMRs requires strong problem-solving, communication, and organizational skills.

23. In or around 2018, internal leadership at Amtrak reached a consensus (Chris Jagodzinski, Howard Conway) that Amtrak needed CMRs to perform much better. Amtrak promoted Kates to the role of Senior Director Crew Management because he possessed the skills and talent to lead this group.

24. When Kates assumed the role, the department was highly dysfunctional and toxic, and performed at a very low level. The ability of Crew Management supervisors and dispatchers to support field supervision was nonexistent. Significant issues existed between management and union leaders.

---

[1] iLMS stands for Integrated Labor Management System.

4

25.     Over the next five and a half years in the role, Kates greatly improved the performance of Crew Management by properly aligning internal responsibilities and clearly communicating his expectations of field supervisors to maximize productivity and outcomes.

26.     Kates significantly improved the internal relationship with local union representative (Robert Dougherty) and external union leaders (Rick Pauli and Mark Kenny) to better understand each other's needs and work together to efficiently get things done.

27.     To create transparency and establish consistency, at the direction of Amtrak Human Resources (Tonia McMillian) and working closely with Kates's supervisor (Howard Conway) and Labor Relations (Aaron Buck), Kates authored and presented a novel method to achieve goals – it was referred to as the Accountability Matrix.  The Transportation Clerical Union approved the matrix, and it was widely considered as a fair and consistent method to improve employee performance and ensure that training follows each failure to reduce the likelihood of repeating the same mistake.  The Accountability Matrix was race and gender blind.

28.     Kates's team worked hard to improve the workforce through paying more attention to whom was hired.  During his tenure, his team interviewed and hired incredible, diverse, and talented Crew Management Representatives by focusing on teamwork and attitude.

29.     By 2023, Amtrak was also championing diversity in hiring.  Amtrak emphasized its "Diversity in Action" pledge.  Amtrak was creating a diverse talent pipeline and "[t]hrough a *concentrated* effort in the promotion and succession planning process, Amtrak *exceeded* goals with 55% of promotions that include diverse talent in FY23." https://media.amtrak.com/2024/04/amtrak-releases-its-fourth-annual-diversity-report/ (emphasis added).

5

30. Amtrak expected Kates to use diversity characteristics, including race, in the hiring and promotion process.

31. During Kates's time at Amtrak, he was promoted multiple times and he received exceptional evaluations, including multiple notations regarding his "outstanding work ethic" and "proven ability and experience."

32. As he grew older, however, Kates began to receive modest ratings of "meets expectations" by Howard Conway (Vice President of Transportation) because – according to Mr. Conway – Kates "made too much money," implying that Kates's rating and therefore compensation were being capped because of his age, length of service, and experience rather than his merit.

33. Yet Kates continued to play a crucial role within Amtrak, including in assisting Amtrak through COVID. Amtrak recognized him with two Awards of excellence in 2022 and 2023.

34. By 2024, Kates was an award winning senior director who was highly regarded in the organization. The problem, however, was that he was a high earner by Amtrak standards, and he was nearing a combined age and length of service that would allow him to lucratively retire from Amtrak. In other words, he was getting old.

35. In early 2024, as a pretext for the termination, Amtrak – out of the blue – accused Kates of two policy violations.

36. Amtrak accused Kates of using so-called "vulgar language" during a private Microsoft Teams meeting with one of his long-time colleagues and friends that allegedly violated Amtrak's Code of Ethics and Standards of Behavior.

37. Amtrak also shockingly accused Kates of making race-related hire and promotion decisions, which was a preposterous and tortuous interpretation of Kates's efforts to manifest Amtrak's DE&I targets and initiatives.

38. Amtrak of course uses race when considering hiring and promotions, and Amtrak directed Kates to consider race in making his massive team diverse. As late as fiscal year 2023, Amtrak touted that over 12,500 of its 22,658 employees were diverse.

39. Amtrak taught Kates to consider the demographic makeup of a group and diversify.

40. Amtrak releases an annual report that celebrates its diversity, inclusion, and belonging initiatives. See Exhibit "B."

41. Amtrak also falsely alleged that Kates had to be terminated because he had a prior disciplinary history, which was not true.

42. In 2019, an employee noted that Kates made her feel "uncomfortable" in a disciplinary meeting – *a meeting necessitated by the employee's own inappropriate relationship with another employee.*

43. Following this meeting, Amtrak provided Kates with a letter, attached hereto as Exhibit "C." In Amtrak's own words, any discipline was held in abeyance, and Kates successfully completed training on investigator methods and all of the online courses that Amtrak assigned to him. Kates adhered to the conditions in the letter and Amtrak deemed the matter closed.

44. On April 24, 2024, with no legitimate investigation and no legitimate business reason, Amtrak abruptly fired Kates. Amtrak, after a mourning period, filled his multiple roles

7

with preferred younger, less compensated, non-retirement aged candidates when its "hiring freeze" lapsed.

45.     Amtrak falsely accused Kates of being racist and then cancelled him. Kates was never advised of any racially divisive behavior. For instance, any reference for race during the hiring process was based on guidance that Kates received *from Amtrak* on building a diverse work force. Amtrak *required* Kates to focus on racial diversity while hiring and promoting. Kates treated all employees equally and was never accused of favoritism or provided with specific allegations where favoritism was leveled.

46.     Kates never received any coaching or corrective action from his supervisors. Kates was not responsible for any of the alleged racist remarks. Decisions were not based on race, but diversity was always considered when hiring and promoting. To demonstrate how discussions and actions specific to race occurred, in the OBS CMR[2] ranks, three black/African American females left the department in a relatively short amount of time. HR provided Kates's supervisor with resumes of 20 qualified black female applicants, so the selection could be made to replace a segment of the work force where they lost several employees. Kates cannot be held responsible for improper practices or a perceived improper application of policy when senior leadership made the racial profiling decisions. Amtrak never advised Kates that "his practices" were not aligned with Amtrak policies or Code of Conduct.

47.     Amtrak refused to provide Kates with any investigation materials that led to this termination.

48.     Kates made $210,564.00 at the time of his unjust termination.

---

[2] OBS means "onboard services," the people who actually work on the trains, and "CRM" means Crew Management Representative.

49. To prevent Kates from reaching his full pension opportunities, and to suddenly scale back payroll, Amtrak trumped up a reason to terminate Kates. Kates was fewer than two years (20.5 months) from retirement treatment eligibility and receiving his full pension when he was terminated. Kates was projected to receive $8,200.00 per month beginning in February 2026. Kates will now receive only $5,200.00 per month beginning in October 2027.

50. By back filling his role with junior employees, Amtrak will realize nearly $400,000.00 in budget savings by the end of 2025.

51. Amtrak scarred Kates's reputation, making it difficult for him to find an equivalent role in his chosen profession.

52. Kates satisfies the requirements to state an age discrimination claim. For a plaintiff to establish a *prima facie* case of age discrimination, he must demonstrate that: (1) he is a member of a protected class; (2) he was otherwise qualified for his job and performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) the employer took the adverse action because of the plaintiff's age.

## COUNT I

### ADEA – Age Discrimination

53. Kates incorporates by reference the prior paragraphs of this Complaint as through fully set forth at length herein.

54. The actions of Amtrak through its agents, servants, and employees in subjecting Kates to discrimination based upon his age, and in knowing or exhibiting reckless disregard for whether its conduct was prohibited by statute, constituted willful violations of the ADEA.

55. Kates was born in 1965: he is a member of a protected class.

9

56. Kates was qualified to perform the Senior Director of Crew Management job and he did so satisfactorily for years.

57. Amtrak terminated Kates: he suffered a tangible adverse employment action.

58. The top two candidates to replace Kates (the people doing the work today) are substantially younger than Kates.

59. Amtrak terminated Kates because of his age and proximity to retirement.

60. Amtrak had no legitimate, non-discriminatory reasons for its actions.

61. As a direct result of the unlawful discriminatory practices in which Amtrak engaged in violation of the ADEA, Kates sustained damages including loss of earnings and emotional distress.

## COUNT II

### DDEA – Age Discrimination

62. Kates incorporates by reference the prior paragraphs of this Complaint as through fully set forth at length herein.

63. The actions of Amtrak through its agents, servants, and employees in subjecting Kates to discrimination based upon his age, and in knowing or exhibiting reckless disregard for whether its conduct was prohibited by statute, constituted willful violations of the DDEA.

64. As a direct result of the unlawful discriminatory practices in which Amtrak engaged in violation of the DDEA, Kates sustained damages including loss of earnings and emotional distress.

## COUNT III

### Negligent Infliction of Emotional Distress

65. Kates incorporates by reference the prior paragraphs of this Complaint as through fully set forth at length herein.

66. Amtrak owed Kates a duty to act with reasonable care to avoid foreseeable harm. Kates would have continued to successfully work for Amtrak until he was 65, receiving his full retirement benefits, if Amtrak did not abruptly fire him.

67. Amtrak negligently breached its duty. Specifically, Amtrak terminated Kates, who is married with younger children and who cares for a disabled brother, with no severance and only six days of medical benefits. Amtrak even went as far as to have a police officer escort Kates out of the CNOC building. Amtrak humiliated Kates in front of his peers to mask its own unlawful intend – to fire a high earner as a warning shot to other senior employees.

68. Kates suffered severe and significant mental suffering and emotional distress as a result of Defendant's negligence.

69. Kates suffered anxiety, depression, grief, worry, shock, and humiliation as a result of Defendant's conduct.

70. Kates experienced physical displays of his emotional pain caused by Defendant.

71. The distress that he has experienced for the last 15 months has affected his daily life, his relationships, and his ability to function normally. His prospects of living comfortably after the age of 60 were shattered. Amtrak's actions caused emotional pain beyond mere disappointment.

## PRAYER FOR RELIEF

**WHEREFORE**, Kates requests that this Court enter judgment in his favor and against Amtrak as follows for:

(a) compensatory damages and reinstatement of retirement eligibility with full pension;

(b) back pay;

(c) front pay;

(d) liquidated damages;

(e) losses for pain, suffering, extreme anguish, loss of enjoyment of life, and other nonpecuniary losses;

(f) attorney's fees and costs;

(g) an allowance to compensate for negative tax consequences; and

(h) other relief that the court deems just and proper.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

Dated: September 11, 2025

Respectfully Submitted,

/s/ Michael J. Fortunato
Michael J. Fortunato, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
1200 Liberty Ridge Drive, Suite 220
Wayne, PA  19087
(610) 408-2005
Facsimile: (610) 854-4305
mfortunato@rubinfortunato.com

*Attorney for Plaintiff, Michael Kates*

## VERIFICATION

I, Michael Kates, verify that I have reviewed the factual statements made in the *Complaint* against National Railroad Passenger Corporation d/b/a Amtrak and that the statements are true and correct to the best of my knowledge, information, and belief. I understand that false statements made herein are subject to the penalties of perjury.

Dated: September 11, 2025

Michael Kates

*/s/ Michael Kates*